STATE OF CONNECTICUT *v.* MELVIN MITCHELL
(AC 18502)

Landau, Spear and Shea, Js.

Argued March 2—officially released August 3, 1999

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Judith Rossi*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan Alexander*, senior assistant state's attorney, for the appellee (state).

*Robert E. Lancaster, Stephen Wizner* and *Frank R. Wright*, law student intern, filed a brief for the Connecticut Legal Rights Project of The Jerome N. Frank Legal Services Organization as amicus curiae.

*Opinion*

SHEA, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). He raises five grounds for reversal of the judgment: (1) the delay between the filing of the first information and the commencement of jury selection, claimed to exceed four years, violated his statutory and constitutional right to a speedy trial; (2) the trial court, in violation of his right to due process of law, failed to appoint an attorney to represent him in opposing the competency hearings; (3) the victim's statement to the police was admitted in evidence pursuant to the constancy of accusation doctrine despite the unavailability for cross-examination of the officer who

took the statement; (4) testimony about a subsequent encounter between the victim and the defendant, which was admitted to show consciousness of guilt, should have been excluded; and (5) the claimed failure to inform the defendant on the record in open court of the charges against him violated his right under the sixth amendment to our federal constitution and article first, § 8, of our state constitution, both of which provide that in all criminal prosecutions, the accused shall enjoy the right to be informed of the nature and cause of the accusation. We affirm the judgment of the trial court.

On the evening of May 17, 1991, the victim encountered the defendant, whom she knew from the neighborhood. They had a conversation and made plans to meet that evening. A short time later, the defendant drove his truck to a place where he again met the victim, who entered the truck. The defendant drove to an auto repair shop, where he and the victim smoked a small amount of cocaine. The defendant, accompanied by the victim, then drove to a club on Albany Avenue in Hartford, where he purchased more cocaine, gave it to the victim to hold and drove with her to his residence on Blue Hills Avenue, where he occupied a basement apartment. The defendant prepared some of the cocaine and both of them smoked it.

When the defendant asked the victim to remove her clothes, she refused and told him that she wanted to leave. The defendant became very angry, and the victim was frightened. She removed her clothes and claimed that the defendant forced her to perform oral sex and penetrated her vagina with his penis without her consent. He also performed oral sex on her without her consent.

Eventually the victim escaped by running out of the apartment without her clothes. She ran across the street to an apartment building to which she was admitted

after ringing several doorbells. After the victim told the woman who admitted her that she had been raped, the police were called. On appeal, the defendant does not claim that the evidence at trial was insufficient to support the verdict of guilty on any of the counts of which he was convicted.

I

The sixth amendment to our federal constitution provides, inter alia, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." Article first, § 8, of the constitution of Connecticut provides that "[i]n all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial by an impartial jury. . . ." General Statutes § 54-82m directs the judges of the Superior Court to adopt rules providing that the trial of a defendant charged with a criminal offense shall commence within twelve months from the date of the information or from the date of the arrest, whichever is later. The statute provides for dismissal of an information or indictment if a trial is not commenced within thirty days after a defendant has moved for a speedy trial. Practice Book §§ 43-39, 43-40 and 43-41 contain various provisions implementing the statute.

The defendant was first arrested on June 24, 1991. His first trial did not begin until March 10, 1993, a delay of more than twenty months after his arrest. He was not incarcerated, however, during that period. Most of the delay resulted from continuances requested by the defendant to obtain new counsel because of his dissatisfaction with the attorney representing him. Six different attorneys filed appearances on behalf of the defendant while this case was pending in the trial court.

After commencement of his first trial on March 10, 1993, the defendant failed to attend that proceeding on March 15, 1993, necessitating a mistrial, bond forfeiture

and the issuance of a rearrest warrant. The defendant was rearrested in Massachusetts on October 14, 1993, and he was incarcerated thereafter. In his brief, the defendant concedes that he was responsible for all of the delay, except for two periods: (1) March 15, 1993, when the trial court declared a mistrial because the defendant did not appear for trial, until October 14, 1993, the date of his rearrest; and (2) June 22, 1994, when the court found the defendant incompetent to stand trial because of his inability to assist his counsel, until March 16, 1995, when the court found that he had regained his competence.

We hold, however, that neither of these two periods of delay can properly be charged against the state with respect to the defendant's right to a speedy trial. "A defendant cannot complain of any delay attributable to his flight or unavailability." *United States* v. *Bey*, 499 F.2d 194, 203–204 (3d Cir. 1974). "[L]aw enforcement officials are not expected to make heroic efforts to apprehend a defendant who is purposely avoiding apprehension or who has fled to parts unknown." *Rayborn* v. *Scully*, 858 F.2d 84, 90 (2d Cir. 1988). "In our view, an exception to the [sixty day] limitation period for acts of God and misconduct on the part of the defendant is a necessary implication." *United States* v. *Bubar*, 567 F.2d 192, 200 n.20 (2d Cir. 1977), quoted with approval in *State* v. *Brown*, 242 Conn. 289, 308–309, 699 A.2d 943 (1997). There is no evidence that the state did not move promptly to apprehend the defendant once it learned of his whereabouts.

With respect to the delay resulting from the competency hearings and the time consumed during the defendant's recovery, we see no basis for charging that delay to the state. It was the public defender then representing the defendant who first raised the question of his competence. On May 31, 1994, she requested that the trial court order a competency evaluation, and the court

granted the request. The defendant did not object to the order, but said that he would not work with his attorney and that he wanted the court to dismiss her from his case. On June 22, 1994, at the start of the competency hearing, the defendant said that he had cooperated with the evaluation team and expected its members to testify favorably for him. A psychiatric social worker testified that the defendant believed the defense bar was in collusion with the prosecutors and, because of this delusion, the defendant was unable to assist counsel in his defense. The court found the defendant incompetent to stand trial and committed him to the custody of the commissioner for mental health until he regained competence.

On August 31, 1994, a physician from the Whiting Forensic Institute testified that the defendant still suffered from a persecutory delusional disorder and recommended treatment in a hospital setting with an antipsychotic medication, which the defendant refused to take. Finally, on March 16, 1995, the same physician from the Whiting Forensic Institute testified that, while the diagnosis of the defendant, who was still refusing the medication, had not changed, he had demonstrated an ability to work with an attorney whom the defendant had known for twenty-five years. The court found the defendant competent to stand trial on the basis of that testimony. On March 29, 1995, the court denied the defendant's final speedy trial motion after excluding all of the time involved in the evaluation, treatment and restoration of the defendant's competence.

We agree with the trial court that the time consumed in the proceedings relating to the defendant's competence and in the treatment that eventually resulted in his being able to stand trial cannot be charged against the state for speedy trial purposes. Procedural due process requires that, when a serious question about the

defendant's competence arises, the trial court must conduct an inquiry into his mental capacity before proceeding with the case. *State* v. *Gonzalez*, 205 Conn. 673, 686, 535 A.2d 345 (1987). General Statutes § 54-56d mandates such an inquiry when counsel for the defendant or the state requests an examination to determine a defendant's competence.

Our rejection of the defendant's claim that the state should be charged with the delay resulting from his failure to appear for trial on March 15, 1993, and also with the delay between June 22, 1994, and March 16, 1995, caused by the competency proceedings, removes any basis for finding a violation of the defendant's right to a speedy trial in view of the statement in his brief admitting that he was responsible for all of the remaining delay. We conclude that there is no merit in the defendant's claim of such a violation.

## II

The defendant claims that the failure of the trial court to appoint another attorney for him during the competency proceedings, which he claims to have opposed, violated his right to due process of law.[1] No request for such an appointment was made at trial, but the defendant claims that the court should have appointed additional counsel, suo motu, once it appeared that his appointed attorney was requesting a procedure that the defendant opposed. We agree with the defendant that the claim involves a constitutional right and may be reviewed pursuant to *State* v. *Golding*, 213 Conn. 233, 239–240, 567 A.2d 823 (1989), despite the failure to raise

---

[1] The Connecticut Legal Rights Project has been permitted to file an amicus curiae brief on this issue. In its brief, the amicus requests this court to formulate a rule regarding the role of defense counsel when a defendant opposes proceedings in which his competence to stand trial is questioned. Because we conclude that in this case the defendant suffered no harm from the failure to appoint counsel to oppose the competency proceeding, we need not comply with that request.

it at trial.[2] We hold, however, that the failure to appoint counsel to oppose the competency proceedings was harmless beyond a reasonable doubt.

The harm that the defendant claims as a result of the competency proceedings is the delay in commencing the second trial from May 31, 1994, when his counsel requested a mental evaluation because the defendant would not cooperate with her in preparing his defense, until March 16, 1995, when he was found to have regained competence. "A defendant shall not be tried, convicted or sentenced while he is not competent." General Statutes § 54-56d (a). The American Bar Association's Criminal Justice Mental Health Standards (1989) § 7-4.2(c) advise defense counsel to move for an evaluation of the defendant's competence to stand trial whenever he in good faith doubts his client's competence. On appeal, the defendant does not claim that his trial counsel acted improperly in seeking an evaluation of his competence for trial. "If the court finds that the request for an examination is justified . . . the court shall order an examination of the defendant as to his competency." General Statutes § 54-56d (d). The attorney who requested the competency examination had undertaken the representation of the defendant after four previous attorneys were permitted to withdraw because of lack of cooperation by the defendant. Under those circumstances, it is inconceivable that the court

---

[2] "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

would not have ordered a mental examination of the defendant regardless of whether the defendant had counsel to assist him in opposing the competency proceeding.

If another attorney had been appointed to oppose the request for an evaluation of the defendant's competence, the time consumed in the competency proceedings would not have been shortened but, more likely, would have been prolonged. Even if there had been no competency hearing, the second trial could not have proceeded until the defendant had established a satisfactory relationship with new counsel. Such a relationship was finally established with the attorney who represented him at trial. There is nothing in the record to indicate that the competency hearings delayed the defendant in obtaining counsel satisfactory to him. We conclude, beyond a reasonable doubt, that the defendant suffered no harm from the failure of the trial court to appoint counsel to oppose the competency proceeding.

### III

The defendant claims that the victim's written statement to the police made on the night of the crime should not have been admitted into evidence under the constancy of accusation doctrine because the officer who took the statement was unavailable for cross-examination and the trial court did not charge the jury on that doctrine. Prior to the decision in *State* v. *Troupe*, 237 Conn. 284, 297, 677 A.2d 917 (1996), our rule allowed the state to introduce the fact of the sexual assault complaint and the details thereof once the victim had testified regarding that crime and the identity of the person or persons to whom a complaint had been made. In *Troupe*, our Supreme Court modified the rule to limit the testimony of a person to whom a sexual assault victim has reported such a crime "to the fact and timing

of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the perpetrator." Id., 304. The court, however, explicitly stated that the modification of the rule "will apply only to those cases in which constancy of accusation testimony has not yet been admitted into evidence on the date of publication of this opinion." Id., 305. *Troupe* was officially released on June 11, 1996, approximately eleven months after the jury returned its verdict in the present case on July 18, 1995. Accordingly, the modification of the constancy of accusation rule effectuated by *Troupe* does not apply to this case.

The defendant's claim that the victim's statement to the police officer was inadmissible because of the unavailability of the police officer who recorded it is contrary to precedent in this state. "The statements being admissible when offered by the state it is immaterial that they are offered through the testimony of the declarant rather than the listener." *State* v. *Hamer*, 188 Conn. 562, 565, 952 A.2d 313 (1982). Although the officer who took the statement was not available for cross-examination, the victim who gave the statement was available, and the defendant had ample opportunity to cross-examine her on every aspect of her statement.

As an additional ground for admitting the victim's statement, the state contends that the written statement was properly admitted as a prior consistent statement after the defendant had cross-examined the victim to disclose inconsistencies in her testimony. The trial court, in its discretion, may admit into evidence a prior consistent statement of a witness who has been impeached by a prior inconsistent statement for the purpose of rehabilitating the witness. *State* v. *Valentine*, 240 Conn. 395, 413, 692 A.2d 727 (1997).

Contrary to the defendant's assertion, the trial court instructed the jury at the time the victim's statement was admitted into evidence that it could be used only for the purpose of evaluating her credibility and not for substantive purposes. The defendant never requested that such an instruction be included in the final charge to the jury or took any exception because of the lack thereof. There is no merit in the defendant's claim that the victim's written and sworn statement should not have been admitted into evidence.[3]

## IV

The trial court allowed the state to introduce evidence of a subsequent encounter of the defendant with the victim to prove consciousness of guilt on the part of the defendant. The victim was permitted to testify that in August, 1991, after the defendant was arrested on June 24, 1991, and released on bond, she was walking along Sargeant Street in Hartford with a little girl for whom she was babysitting when the defendant drove up in his van. He crossed over to her side of the street and told her that he was mad at her because she had called the police on him and caused him to be arrested. The defendant then drove his van up on the sidewalk as if he was going to hit her with the van. She then grabbed the child and ran into a nearby park where other people congregated. The trial court instructed the jury briefly that this testimony was being admitted to show consciousness of guilt on the part of the defendant.

"On several occasions this court has approved the admission of threats against or attempted intimidation of witnesses as evidence of consciousness of guilt."

---

[3] Because the statement was signed and sworn to by the victim, who was available for cross-examination, it would also qualify for admission pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

*State* v. *Leecan*, 198 Conn. 517, 534, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). A widely recognized exception to the rule excluding evidence of other crimes of a defendant allows evidence of criminal acts intended to obstruct justice or to avoid punishment for the crime presently charged. *State* v. *Holliday*, 159 Conn. 169, 172, 268 A.2d 368 (1970). The victim's testimony describing her encounter with the defendant on Sargeant Street reasonably could be viewed to indicate that the defendant had attempted to intimidate her and thus qualified for admission within the discretion of the trial court.

V

The final claim of the defendant is that the transcripts of the proceedings fail to show that he was personally "informed of the nature and cause of the accusation" against him in violation of the sixth amendment to our federal constitution and article first, § 8, of our state constitution. Both constitutions provide that in all criminal prosecutions, the accused shall enjoy the right to be informed of the nature and cause of the accusations. The defendant concedes that his counsel may have been so informed, but maintains that it is the accused and not his counsel to whom the right is given. He relies on *Faretta* v. *California*, 422 U. S. 806, 819–20, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), in which the United States Supreme Court construed the sixth amendment to establish the right of an accused to defend himself without an attorney. In this case, however, the defendant has never asserted such a right and has been represented by six different attorneys at various times during the trial court proceedings. The trial court file indicates that he was represented by an attorney on August 6, 1991, when pro forma not guilty pleas were entered to an information charging him with two counts of sexual assault in the first degree and one count of unlawful restraint in the second degree. He was similarly repre-

sented by counsel when substitute informations were filed and not guilty pleas were entered.

On March 10, 1993, at the start of the first trial, the court informed the venire panel in the presence of the defendant and his attorney that the defendant was charged with first degree kidnapping and three counts of sexual assault in the first degree. His attorney, who had received a copy of the information, waived its reading, entered a not guilty plea for the defendant and informed the court that the defendant knew his accuser. On February 10, 1994, the defendant told the court in rejecting a plea offer that he would not plead guilty to "this case of sexual assault that I didn't do." When the second trial began in June, 1995, the defendant was present when the court informed the prospective jurors of the charges. He was also present with counsel when the court read the long-form substituted information to the jury before any evidence was presented.

We conclude that there is so little substance to the defendant's claim that he was not "informed of the nature and cause of the accusation against him" in violation of the sixth amendment to our federal constitution and article first, § 8, of our state constitution that it warrants no further discussion.

The judgment is affirmed.

In this opinion the other judges concurred.