[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this habeas corpus action the petitioner claims ineffective assistance of counsel in the entry of a guilty plea. By way of an amended petition for habeas corpus dated February 7, 2000 and filed February 8, 2000, the petitioner alleged that his attorney, Christopher James was ineffective because he failed to:
(1) "have the petitioner examined for any psychological/psychiatric conditions which would impair petitioner's ability to understand the charges and proceedings;"
(2) "request a competency examination prior to the plea entry despite requesting a CADAC evaluation prior to sentencing;" and
(3) "investigate potential defenses, most specifically intoxication and diminished capacity."
 I. CT Page 7130
This matter was tried to the court on May 30, 2000. The following facts are found:
The petitioner was charged in two separate informations, Docket No. CR-97-144212 and Docket No. CR-97-144256, with, among other charges, multiple counts of robbery in the first degree stemming from two separate incidents, one in Middletown and one in East Hampton. Exhibit A.[1]
On April 7, 1998, he pleaded guilty under the A/ford doctrine before Judge James M. Higgins to a single count of robbery in the first degree in each information with an agreement that the court would impose a sentence of eight years. Exhibit B.
The petitioner was represented by Attorney Christopher James, an assistant public defender. Attorney James has been employed with the Public Defender Service for eighteen years, working both in the geographical area and judicial district courts. During that time he has handled in excess of 20,000 cases. Attorney James began his representation of Brown in late October or early November, 1997 and met with him at least twelve times between then and the entry of the plea in April, 1998. The plea bargain was first offered to Brown in December, 1997 by Judge Stanley, but the plea proceedings were deferred because Brown had indicated a willingness to assist the police in an unsolved crime with the hopes of receiving a reduced sentence.
James recommended the plea bargain to Brown based on Brown's exposure of in excess of 40 years, the strength of the state's case against Brown which included a confession and a surveillance video of at least one of the incidents, and Brown's lengthy criminal history which James advised Brown would likely result in significantly lengthier sentence after trial. According to James, he discussed the defense of intoxication with Brown and explained that it was a very difficult defense because Brown was charged with two separate robberies on different dates. James also thought that a diminished capacity defense would not apply.
Until just shortly before the plea date, there were no indications that Brown had any mental I impairment which would prevent him from assisting counsel or understanding the nature of the proceedings against him. In late March or early April, 1998, just before the plea date, Brown told James for the first time that he suffered from blackouts and did not remember committing the crimes, even though he had made incriminating statements to the police. Based on this information, James had his social worker immediately contact a psychologist and schedule an evaluation. However, since there was no indication of any lack of competence to plead CT Page 7131 guilty and no viable defenses, the guilty pleas were entered. The pleas, however, were entered under the A/ford doctrine because the defendant claimed he could not recall the criminal events due to a problem with blackouts.
The transcript of the guilty plea proceeding on April 7, 1998, exhibit B, reveals that Brown lucidly and clearly explained both his understanding of the plea proceeding and, at first, expressed dissatisfaction with James.[2] In addition, Brown told Judge Higgins that he had a problem with blackouts and he did not remember committing the crimes. Based on his colloquy with Brown, Judge Higgins interrupted the plea canvass so that James and Brown would have an opportunity to discuss the issues Brown had raised with the court. Upon returning to the courtroom, James represented to the court that Brown wished to proceed with the plea and the following occurred:
The Court: Are you satisfied with your attorney's representation of you?
The Defendant: Yes, sir. The Court: Yes?
The Defendant: Yes, sir.
 The Court: And do you feel that he's done all that should be done up to this point to protect your rights and interests.
The Defendant: I think so.
The remainder of the plea canvass proceeding was unexceptional. The defendant clearly and intelligently responded to all the questions asked of him.
Sometime after the plea proceedings and after he had been examined by a psychologist hired by the public defenders' office, Brown apparently wrote a letter to either Judge Higgins or Judge Stanley in which he made accusations about the representation provided to him by James. As a result, the case was reassigned to Attorney Borenstein, a special public defender, who appeared for the defendant at his sentencing on June 23, 1998. Exhibit C. James turned over the psychologist's report[3] to Borenstein, along with his file.
 II.
There is a two-part test for establishing ineffective assistance of counsel arising out of the plea process. First, a petitioner must demonstrate that counsel's representation fell below an objective standard of competence. Strickland v. Washington 466 U.S. 668, 687-88, CT Page 7132104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The question is "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance. . . . counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id., 466 U.S. 690. Second, the petitioner must demonstrate prejudice and in order to do so he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart,474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "To satisfy the Hill standard, a defendant must prove that, but for defense counsel's deficient performance, there is a reasonable probability that he would have pleaded not guilty and proceeded to trial on the basis of the likelihood that his defenses would succeed in providing a more favorable outcome." Copas v. Commissioner of Correction, 234 Conn. 139, 157, n. 10,662 A.2d 718 (1995). A "successful outcome at trial has been interpreted to include either the likelihood of acquittal or the likelihood of a more favorable sentence." 234 Conn. 162, n. 18.
The petitioner has failed to prove either of the requisite prongs. There is no evidence that James's performance was not reasonably competent or within the range of competence expected of attorneys with ordinary training and skill in criminal law. There is simply no basis upon which the court can conclude that there was any reason for James to believe that he had to request a competency examination of Brown. See State v. Mitchell, 54 Conn. App. 362, 368, 738 A.2d 188 (1999) (Defense counsel obligated to move for competency evaluation only if has "good faith doubts" about client's competence.). "The standard we use to determine whether a defendant is competent under state law to stand trial is that set forth in Dusky v: United States, 362 U.S. 402, 80 S.Ct. 788,4 L.Ed.2d 824 (1960) (test for competence to stand trial is whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him"'). The Dusky standard has been codified at § 54-56d(a), which provides that "[a] defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of I this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense."' State v. Wolff.237 Conn. 633, 663, 678 A.2d 1369 (1996). The evidence before the court overwhelmingly establishes that Brown had a rational and factual understanding of the proceedings against him and was able to assist in his defense.
Furthermore, James took extra steps on Brown's behalf, in having a psychological examination conducted and requesting a CADAC evaluation, in CT Page 7133 an effort to get Brown treatment for his underlying problems within the Department of Corrections. James certainly cannot be faulted for those efforts.
Finally, there is simply no evidence to refute James' testimony that he considered and appropriately rejected defenses of intoxication and diminished capacity. James appropriately focused his efforts on obtaining a plea agreement for Brown that limited the petitioner's exposure to only eight years, when he faced in excess of forty years on the original charges.
As to the second prong, there is no evidence of prejudice. Other than the petitioner's selfserving statement that he would have elected to go to trial, the petitioner has failed to offer any credible evidence, based on the strengths of the state's cases and any viable defenses available to him, that he was likely to face a more successful outcome at trial than the negotiated agreement. To the contrary, the only credible evidence is that the state had two strong cases against him, supported in part by his own incriminating statements and surveillance video, and that petitioner's defenses were unavailing. Under these circumstances, it is not reasonably probable that the petitioner would have been acquitted of the most serious charges against him, both robbery in the first degree in violation of General Statutes § 53a-134 (a)(2), which are B felonies carrying a maximum term of 20 years and a mandatory minimum term of 5 years, see footnote I, supra., and it is reasonably probable that he would have received a significantly lengthier consecutive sentence after trial.
 III.
The petitioner has failed to meet his burden of proving either prong of the Strickland-Hill requirements. Accordingly, the petition for habeas corpus is denied. _____________________ LINDA K. LAGER, JUDGE